IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DIANAH GREENE, individually and On behalf of the heirs-at-law of EDWARD GREENE, deceased,<br><br>Plaintiff,<br><br>v.<br><br>CSAA FIRE & CASUALTY INSURANCE COMPANY d/b/a AAA Insurance, et al.,<br><br>Defendants. | Case No. 16-4144-DDC-KGS |

**MEMORANDUM AND ORDER**

This matter comes before the court on two motions. Defendant CSAA Fire and Casualty Insurance Company, doing business as AAA Insurance ("CSAA"), has filed a Cross Motion for Summary Judgment. Doc. 14. Defendant Safeco Insurance Company of America ("Safeco") also has filed a Motion for Summary Judgment. Doc. 15. All parties have filed responses and replies. For reasons explained below, the court grants Safeco's Motion and denies CSAA's Motion.

**I.   Uncontroverted Facts**

The parties have stipulated to the following uncontroverted facts. *See* Doc. 13.

On February 18, 2016, Marcos Adan Cruz, Jr. negligently drove his car into a car driven by Jerry Griggs. Edward Greene was riding as a passenger in Mr. Griggs's car. Mr. Cruz ran a red light while evading law enforcement officers, colliding with Mr. Griggs's car. Mr. Cruz carried insurance covering the car he was driving, but his insurance company denied coverage

for the accident. Thus, for purposes of this dispute, Mr. Greene was killed in an accident with a negligent uninsured motorist.

Safeco insured Mr. Greene and his wife, Dianah Greene, under a policy covering a car not involved in the accident. Safeco's uninsured motorist coverage established a limit of $100,000 per person. This policy provides, "[A]ny insurance we provide with respect to a vehicle you do not own . . . shall be excess over any collectible insurance." Doc. 13-1 at 53. This coverage is commonly known as an "excess-escape" clause. Safeco's policy also provides that if Safeco provides coverage on a primary basis, then Safeco only will pay "the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis." *Id.*

CSAA insured Carol and Mr. Griggs on the car Mr. Griggs was driving at the time of the accident. The uninsured motorist coverage limit under their CSAA policy is $250,000 per person. The CSAA policy also provides, "[A]ny insurance we provide with respect to a vehicle you do not own . . . shall be excess over any collectible insurance." Doc. 13-2 at 31. The CSAA policy also provides that if CSAA provides coverage on a primary basis, then CSAA will only pay "the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis." *Id.* at 31–32. CSAA's policy covers Mr. Greene because he was a passenger in Mr. Griggs's car when the accident occurred. *Id.* at 27.

Plaintiff Dianah Greene, individually and on behalf of the heirs-at-law of Mr. Greene, filed this diversity action for the wrongful death of Mr. Greene. Plaintiff brings this suit against both insurance carriers—CSAA and Safeco. Both insurers have filed cross motions for summary judgment to determine how much each insurance company owes plaintiff. Both defendants

2

agree that the maximum amount plaintiff can recover is $250,000.[1] CSAA argues that both policies are primary and thus the court should divide any award on a pro-rata basis between CSAA and Safeco.[2] Doc. 14 at 3. Safeco argues that it is the excess insurer and not liable for any amount due to plaintiff. Doc. 16 at 7. For reasons stated below, the court holds that Safeco is the excess insurer. The court thus grants Safeco's motion and denies CSAA's motion.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute [about] any material fact" exists and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court applies this same standard to cross motions for summary judgment. Each party bears the burden of establishing that no genuine issue of material fact exists and entitlement to judgment as a matter of law. *Atl. Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1148 (10th Cir. 2000). Cross motions for summary judgment "are to be treated separately; the denial of one does not require the grant of another." *Buell Cabinet Co., Inc. v. Sudduth,* 608 F.2d 431, 433 (10th Cir. 1979). But where the cross motions overlap, the court may address the legal arguments together. *Berges v. Standard Ins. Co.,* 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010) (citation omitted).

Here, neither party disputes the facts at this stage. The interpretation of an insurance contract is a question of law. *Am. Media, Inc. v. Home Indem. Co.*, 658 P.2d 1015, 1018 (Kan.

---

[1] Kansas does not allow "stacking" of insurance policies. Kan. Stat. Ann. § 40-284(d). This prohibition limits plaintiff's recovery to the amount which equals the highest of all applicable policies. *Id.* Here, that amount is $250,000.

[2] CSAA also argues that the court should strike and disregard Safeco's Cross-Motion for Summary Judgment because Safeco failed to file it in a timely fashion. Doc. 20 at 1. Safeco filed its motion on February 1, 2017. CSAA cites the Scheduling Order as proof that the deadline for filing was January 31, 2017. *Id.* at 3. However, the Scheduling Order provides: "defendants *anticipate* preparing cross-motions for summary judgment on stipulated facts of this case by January 31, 2017." Doc. 10 at 7 (emphasis added). This language may have created some confusion, and in any event, a fourteen-hour delay filing a motion after an "anticipated" deadline does not warrant striking Safeco's motion. The court therefore considers Safeco's Cross Motion for Summary Judgment as timely filed.

1983). Thus, the court must decide which party deserves judgment as a matter of law. *See Great Plains Ventures, Inc. v. Liberty Mut. Fire Ins. Co.*, 161 F. Supp. 3d 970, 976 (D. Kan. 2016).

### III. Applicable Law

Before addressing defendants' arguments, the court must determine which state's substantive law governs. *Rigby v. Clinical Reference Lab., Inc.*, 995 F. Supp. 1217, 1221 (D. Kan. 1998) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Because the parties are citizens of different states and the amount in controversy exceeds $75,000, the court has diversity subject matter jurisdiction over this case. *See* 28 U.S.C. § 1332. In a diversity case, federal courts apply the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Kansas law, insurance contracts are governed by the law of the state where the contract was made. *Safeco Ins. Co. of Am. v. Allen*, 941 P.2d 1365, 1372 (Kan. 1997). Here, the parties agree that Kansas law applies and no evidence suggests that the insurance contracts were made outside Kansas. Therefore, the court interprets the contract according to Kansas substantive law. The substantive law is determined by the state's highest court, although the court may look to lower court decisions as persuasive authority for what the highest court would hold unless evidence suggests otherwise. *Etherton v. Owners Ins. Co*, 829 F.3d 1209, 1223 (10th Cir. 2016).

### IV. Discussion

Defendants disagree about the obligations imposed by their respective insurance policies. Safeco argues that CSAA is the primary provider and Safeco is the excess provider. Doc. 16 at 9. As the excess provider, Safeco contends, it has no obligation to pay anything to plaintiff. Safeco also argues that its "excess-escape" clause does not cancel CSAA's "excess-escape" clause. *Id.* at 13. In contrast, CSAA argues that both policies are primary policies, obligating

each defendant to pay plaintiff insurance proceeds on a pro-rata basis. Doc. 14 at 9. CSAA also argues that Safeco's "excess-escape" clause is contrary to public policy. *Id.*

The court first addresses whether Safeco is the primary or excess provider. The court then addresses whether Safeco is trying to dilute its coverage impermissibly. As explained in the analysis that follows, the court concludes that CSAA is the primary insurer and Safeco is the excess insurer. The court's analysis also concludes that nothing in the insurance policies or public policy requires Safeco to pay plaintiff insurance proceeds beyond the $250,000 policy limits that CSAA must pay plaintiff.

### A. Who is the primary insurer?

Deciding which carrier is the primary insurer controls who must pay plaintiff. If both CSAA and Safeco are the primary insurance providers for this accident, then the formulas set out in their policies govern how they must divide the payment to plaintiff.[3] If CSAA is the primary provider and Safeco is the excess provider, then CSAA must pay plaintiff insurance proceeds up to its coverage limit. If the coverage limit is met and plaintiff is still owed money, then the excess insurer must pay the excess but only if the excess insurer's coverage limit is greater than the primary insurer's coverage limit. Safeco argues that CSAA is the primary insurer and Safeco is the excess insurer. Doc. 16 at 9. CSAA argues that both carriers are the primary insurer. Doc. 14 at 3.

---

[3] Neither party disputes how the parties would divide up the payment to the plaintiff if both insurers were the primary insurance providers. *See* Doc. 13 ¶¶ 14, 20. The formula works like this: first, the two policy limits are added together; second, to determine the percentage CSAA is liable for, one divides CSAA's limit by the total of the two limits and repeat the same process for Safeco; third, multiply the percentage by the amount plaintiff is entitled to. Using this formula, the total is $350,000. Doc. 13-1 at 53; Doc. 13-2 at 31. CSAA's liability is 71% ($250,000/$350,000) of the liability amount. And, Safeco's liability is 29% ($100,000/$350,000).

Kansas law requires insurers to offer uninsured motorist coverage with any insurance policy they sell. Kan. Stat. Ann. § 40-284(a). If a person is involved in an accident with a negligent uninsured motorist, the insurer must pay up to the limit established by the policy. *Id.*

In cases like this one, *i.e.*, where the passenger has an insurance policy of his own under a policy carried for a different car, two insurance policies cover the passenger in the accident: the vehicle owner's insurance and the non-owner's insurance. Under Kansas law, the vehicle owner's insurer is the primary insurer and the non-owner's is the excess. *Narron v. Cincinnati Ins. Co.*, 97 P.3d 1042, 1047 (Kan. 2004) (holding the owner's insurance provider was the primary insurer and thus is obligated to pay the non-injured party up its policy limits). Applying this rule here, CSAA is the primary insurer because it covered Mr. Griggs's vehicle that was involved in the crash that took Mr. Greene's life. Safeco thus becomes an excess insurer because it insured the car owned by Mr. Greene. CSAA has a policy limit of $250,000 and Safeco has a limit of $100,000. Since Safeco's limit is lower than CSAA's, Safeco is not obligated to pay anything to plaintiff.

The court is not persuaded by CSAA's argument that *Narron* does not apply here. CSAA argues that the *Narron* holding applies only when the non-owner—here the passenger—is the driver in the crash giving rise to the claim. Doc. 20 at 11. Thus, according to CSAA, because the non-owner of the vehicle here was a passenger, not the driver, the court should not apply *Narron*. *Id.*

CSAA reads *Narron* too narrowly. It ignores that several of the cases that *Narron* cited as support for its holding involved a non-owner of the vehicle, *i.e.*, someone riding as a passenger in the insured vehicle. For example, *Narron* cites *Progressive Casualty Insurance Co. v. Farm Bureau Mutual Insurance Co.*, 9 P.3d 565 (Kan. Ct. App. 2000). *Narron*, 97 P.3d at

1047. In *Progressive*, the passenger of a motorcycle involved in the accident with an uninsured motorist recovered from both the motorcycle owner/operator's insurer as well as her own insurer. 9 P.3d at 566. Progressive, the insurer of the motorcycle owner, sued Farmers, the passenger's insurer, arguing Progressive paid the passenger too much and that Farmers was obligated to reimburse Progressive. *Id.* Farmers argued it had no obligation to pay because the policy's "excess-escape" clause applied. *Id.* at 567. Like Safeco's "excess-escape" clause, Farmers' policy in *Progressive* provided: "any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance." *Id.* The Kansas Court of Appeals agreed that Farmers' "excess-escape" clause applied. It relied on "persuasive authority" to hold that "the insured of a vehicle involved in a collision has primary [uninsured motorist] coverage for a passenger of that vehicle, with the insurer of a passenger providing excess coverage." *Id.* So, because Farmers was an excess insurer, the "excess-escape" clause applied, and it obligated Farmers to pay nothing under the insurance policy. *Id.* at 568. Contrary to CSAA's argument, *Narron* never hinted that *Progressive* did not apply to situations where the party seeking payment was a passenger. Nor does CSAA provide a policy reason why *Narron* cannot apply in a situation, as here, where the passenger, not the driver, is the non-owner of the vehicle.

CSAA advances a second theory why *Progressive* does not apply here. Its argument notes that *Progressive* involved two insurance companies suing each other over their liability to pay under separate insurance policies. Doc. 20 at 14. CSAA points out that here, the insured has sued her own insurance company, *i.e.* Safeco and thus, CSAA theorizes, that fact makes this case materially different from *Progressive*. *Id.* CSAA's characterization misapprehends the present dispute. Plaintiff does not seek compensation just from Safeco. Plaintiff has sued both CSAA and Safeco in her Complaint. Doc. 1-2 ¶ 2. Also, the procedural posture of this motion mirrors

7

the situation in *Progressive* because the defendant insurance companies here are arguing over who must pay under their respective insurance policies. This situation parallels the insurance companies' dispute in *Progressive*. Plaintiff has filed no motion claiming that Safeco, specifically, should pay the insurance proceeds or otherwise disputing how much she is owed. The court finds no material difference between *Progressive* and the facts presented here.

The court thus concludes that the rule adopted by the Kansas Supreme Court in *Narron* applies here. CSAA is the primary insurer because it insures the vehicle's owner. Because Safeco's coverage limit is lower than CSAA's, Safeco has no liability to pay plaintiff any insurance proceeds under its policy.

**B.** **Dilution**

CSAA argues that Safeco's "excess-escape" clause impermissibly dilutes coverage and thereby violates Kansas law. Doc. 14 at 11. Dilution occurs when an insurer tries to pay less than what the insured is owed. *See Stewart v. Capps*, 802 P.2d 1226, 1230 (Kan. 1990). In *Stewart*, the plaintiff was a passenger in a car owned and operated by the defendant when both plaintiff and defendant were injured in a car accident. *Id.* at 1227. The plaintiff claimed that defendant and an unidentified driver had negligently caused the accident. *Id.* ASIC insured the defendant and provided policy limits of $25,000 per person for liability coverage and $25,000 per person for uninsured motorist coverage. This policy also allowed ASIC to reduce any amount due under the uninsured motorist coverage by the amount which ASIC paid under its liability coverage. *Id.* Because ASIC had paid the plaintiff $25,000 for liability coverage, ASIC claimed it owed the plaintiff nothing under the uninsured motorist coverage. *Id.* at 1229.

The Kansas Supreme Court rejected ASIC's position. *Id.* at 1230. The Supreme Court favorably cited an Arizona Supreme Court decision, which had ruled,

8

> The uninsured motorist statute [requiring insurance companies to offer uninsured motorist coverage in their insurance policies] establishes a public policy that every insured is entitled to recover under his or her uninsured motorist coverage the damages he or she would have been able to recover from a negligent uninsured driver had that driver maintained a policy of liability insurance with a solvent company.

*Id.* (quoting *Spain v. Valley Forge Ins. Co.*, 731 P.2d 84, 87 (Ariz. 1986)) (internal brackets omitted). The Kansas Supreme Court noted that Kansas's uninsured motorist statute also was intended to "provide financial protection . . . for injuries caused by a negligent uninsured motorist." *Id.* In other words, the plaintiff should have received payments under the defendant's insurance coverage and also under the coverage for the unidentified driver. *Id.* However, because no one could find the other driver, ASIC's uninsured motorist coverage should have paid what the missing driver would have contributed. *Id.* Allowing ASIC to apply its reduction would deprive the plaintiff of the benefits of the uninsured motorist statute. *See id.* The court concluded that such a provision is void and unenforceable in Kansas. *Id.*

CSAA tries to characterize Safeco's "excess-escape" clause as having the same effect as ASIC's reduction clause. Doc. 14 at 18. It argues that forcing CSAA to pay the full benefits dilutes Safeco's liability. CSAA's argument misses the mark.

This situation differs from *Stewart*. In *Stewart*, the insurance company was trying to prevent the injured party from recovering what it fully owed her. *Stewart*, 802 P.2d at 1229. Here, both carriers agree that the most plaintiff can recover is $250,000. Safeco's "excess-escape" clause does not prevent plaintiff from recovering $250,000. It merely shifts the responsibility to pay that $250,000 from Safeco to CSAA. Kansas law plainly allows this result. *See Farmers Ins. Co., Inc. v. Prudential Prop. & Cas. Ins. Co.*, 692 P.2d 393, 397 (Kan. Ct. App. 1984) ("[T]here is no reason that, once assured full coverage will be afforded the insured, the

insurers cannot be permitted to attempt to make their coverage secondary to the coverage of others."). Safeco's excess-escape clause simply makes its coverage secondary. While Safeco is not obligated to pay plaintiff anything, this result does not dilute plaintiff's recovery.

CSAA also argues that *Prudential* does not apply here because it was a contribution action between insurance companies while the present dispute is a first-party insurance action filed by the insured. Doc. 25 at 8. As already explained, the court sees no meaningful difference between a contribution action and the current dispute. Both involve insurance companies arguing about who must pay the plaintiff under the two policies. The court thus concludes that Safeco's "excess-escape" clause is valid and enforceable. Safeco has no liability to pay plaintiff insurance proceeds in excess of the $250,000 coverage that CSAA's policy obligates it to provide to plaintiff.

## V.     Conclusion

Safeco is entitled to a judgment as a matter of law that it is not liable for any portion of plaintiff's potential award.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Safeco's Cross Motion for Summary Judgment (Doc. 15) is granted.

**IT IS FURTHER ORDERED THAT** defendant CSAA's Cross Motion for Summary Judgment (Doc. 14) is denied.

**IT IS SO ORDERED.**

**Dated this 15th day of September, 2017, at Topeka, Kansas.**

**s/ Daniel D. Crabtree_____
Daniel D. Crabtree
United States District Judge**