IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**DIANAH GREENE, individually and
on behalf of the heirs-at-law of
EDWARD GREENE, deceased,**

      **Plaintiff,**

v.

**CSAA FIRE & CASUALTY
INSURANCE COMPANY d/b/a/
AAA Insurance, et al.,**

      **Defendants.**

Case No. 16-4144-DDC-KGS

**MEMORANDUM AND ORDER**

This diversity suit arises from a motor vehicle accident that occurred on February 18, 2016, in Topeka, Kansas. Edward Greene was killed when a car driven by Marcos Adan Cruz crashed into a car driven by Jerry Griggs. Mr. Greene was riding as a passenger in Mr. Griggs' car. Before the accident, Mr. Cruz was traveling at high speeds and evading the police. As Mr. Griggs' car crossed an intersection at a green light, Mr. Cruz drove his vehicle into the same intersection on a red light. Mr. Cruz's car stuck Mr. Griggs' vehicle—the one carrying Mr. Greene. Mr. Greene sustained fatal injuries and died at the accident scene.

Mr. Cruz's liability insurer denied coverage for the losses sustained by Mr. Greene's heirs because of Mr. Cruz's conduct. So, when the collision occurred, Mr. Cruz was an uninsured motorist under Kan. Stat. Ann. § 40-284. Defendant CSSA Fire & Casualty Insurance Company, a company that does business under the name AAA Insurance ("AAA"), insured Mr. Griggs (the driver of the vehicle carrying Mr. Greene). The AAA policy provided uninsured

motorist coverage with a policy limit of $250,000 per person and $500,000 per accident. Mr. Greene also had a personal automobile policy when the accident occurred. Defendant Safeco Insurance Company of America ("Safeco") issued this policy. The Safeco policy provided uninsured motorist coverage with a policy limit of $100,000 per person and $300,000 per accident.

Plaintiff Dianah Greene, the wife of Edward Greene, brings this lawsuit on her own behalf and on behalf of Mr. Greene's heirs under the Kansas Wrongful Death Act, Kan. Stat. Ann. §§ 60-1901, *et seq.*, to recover damages sustained by Mr. Greene's death. Plaintiff asserts claims against both insurance carriers—AAA and Safeco. Plaintiff and defendant AAA initially reached a partial settlement of the claim for $150,000 in early 2017, which the court approved on February 24, 2017 (Doc. 21). AAA and Safeco filed cross summary judgment motions on January 31 and February 1, respectively, to determine who owed plaintiff $100,000, which is the greatest amount of money plaintiff could recover from either insurance company. On September 15, 2017, the court ruled that AAA owed the $100,000 (Doc. 27).

Shortly afterwards, the parties informed the court that they had reached a full settlement. As the Kansas Wrongful Death Act requires, the court conducted a settlement apportionment hearing on November 15, 2017 by phone. At the hearing's conclusion, the court took the matter under advisement. After reviewing the evidence presented at the hearing and the parties' submissions, the court is prepared to rule on the proper apportionment of the wrongful death settlement proceeds. The court explains its ruling below.

## I.     Findings of Fact

At the time of his death, Mr. Greene had three surviving heirs. The first was his wife of 38 years, Dianah Greene ("Dianah"). Mr. Greene had no biological children. But, he helped

Dianah raise her biological children as if they were his. Later in their marriage, Mr. Greene and Dianah adopted two of Dianah's grandchildren to keep them from entering the foster care system. The two grandchildren are John Igercic-Greene and Rebecca Igercic-Greene, and behind Dianah, they are Mr. Greene's second and third heirs. Mr. Greene had no other heirs-at-law.

Dianah, individually and on behalf of Mr. Greene's heirs-at-law, retained LJ Leatherman of Palmer Law Group, LLP as counsel to pursue a wrongful death action under the Kansas Wrongful Death Act, including uninsured or underinsured motorist claims against defendants AAA and Safeco. As part of the representation, Dianah and Mr. Leatherman entered into a contingency agreement. The agreement provides that Dianah will pay Mr. Leatherman a one-third contingency fee if the claim is settled before filing a Petition to recover damages in court. The agreement also commits Dianah to pay Mr. Leatherman a 40% contingency fee after a Petition to recover damages is filed in court.

Dianah, individually and on behalf of Mr. Greene's heirs-at-law, and defendant AAA now have agreed to a Release of All Claims (the "Settlement Agreement"). The Settlement Agreement provides that Dianah will release her claims against defendant AAA in exchange for $100,000.

At the November 15, 2017 settlement apportionment hearing, the parties asked the court to apportion the $100,000 settlement established by the Settlement Agreement. Specifically, Dianah asked the court to apportion the settlement as follows: (1) $435.39 to the Palmer Law Group for expenses; (2) $33,188.20 to the Palmer Law Group for attorney's fees; and (3) the remaining $66,376.41 to one of the three heirs—plaintiff Dianah Greene. The court considers her request below.

## II. Legal Standard

As a federal court sitting in diversity, the court "appl[ies] the substantive law of the forum state, Kansas." *Cohen-Esrey Real Estate Servs., Inc. v. Twin City Fire Ins. Co.*, 636 F.3d 1300, 1302 (10th Cir. 2011). As stated above, plaintiff brings this action under the Kansas Wrongful Death Act. The Kansas Wrongful Death Act requires the court to apportion the recovery in a Kansas Wrongful Death Act case after conducting a hearing. Kan. Stat. Ann. § 60-1905. The Act provides that the court, first, should allow costs and reasonable attorney's fees for plaintiff's counsel. *Id.* The Act then directs the court to apportion the recovery among the heirs in proportion to the loss sustained by each one. *Id.*; *see also Flowers v. Marshall*, 494 P.2d 1184, 1187 (Kan. 1972) (explaining that the statute "provides for an apportionment among the heirs of any amount recovered to be made by the trial court according to the loss sustained by each"). The full text of Kan. Stat. Ann. § 60-1905 provides:

> The net amount recovered in any such action, after the allowance by the judge of costs and reasonable attorney's fees to the attorneys for the plaintiffs, in accordance with the services performed by each if there be more than one, shall be apportioned by the judge upon a hearing, with reasonable notice to all of the known heirs having an interest therein, such notice to be given in such manner as the judge shall direct. The apportionment shall be in proportion to the loss sustained by each of the heirs, and all heirs known to have sustained a loss shall share in such apportionment regardless of whether they joined or intervened in the action; but in the absence of fraud, no person who failed to join or intervene in the action may claim any error in such apportionment after the order shall have been entered and the funds distributed pursuant thereto.

The Kansas Wrongful Death Act allows for recovery of damages including: (1) mental anguish, suffering, or bereavement; (2) loss of society, companionship, comfort, or protection; (3) loss of marital care, attention, advice, or counsel; (4) loss of filial care or attention; (5) loss of parental care, training, guidance, or education; and (6) reasonable funeral expenses for the deceased. Kan. Stat. Ann. § 60-1904. The statute thus allows the court to apportion both

pecuniary and non-pecuniary losses. *Turman v. Ameritruck Refrigerated Transport, Inc.*, 125 F. Supp. 2d 444, 450–55 (D. Kan. 2000); *see also* Kan. Stat. Ann. § 60-1903 (describing damages the court or jury may award in a wrongful death action). Pecuniary damages are those that "can be estimated in and compensated by money." *Turman*, 125 F. Supp. 2d at 453 (quoting *McCart v. Muir*, 641 P.2d 384, 391 (Kan. 1982)). Pecuniary damages in a wrongful death action "should be equivalent to those pecuniary benefits or compensation that reasonably could have resulted from the continued life of the deceased." *Id.* (quoting *McCart*, 641 P.2d at 391). In Kansas, pecuniary damages "include the losses of such things as marital or parental care, services, training, advice, and financial support." *Id.* Non-pecuniary damages, on the other hand, are generally intangible and may include compensation for "mental anguish, bereavement, loss of society and loss of companionship." *Id.* at 451 (quoting *McCart*, 641 P.2d at 391). "The Kansas Supreme Court has recognized that 'while these [intangible damages] are nebulous and impossible to equate satisfactorily with money, they nonetheless are very real and onerous to a bereaved [family member], often far outweighing in severity and permanent effect the pecuniary loss involved.'" *Id.* (quoting *Corman v. WEG Dial Tel., Inc.*, 402 P.2d 112, 115 (Kan. 1965)).

### III. Discussion

The court addresses the distribution of the settlement proceeds in the order that Kan. Stat. Ann. § 60-1905 presents them.

#### A. Costs

Kan. Stat. Ann. § 60-1905 allows the court to award counsel the reasonable costs incurred during the litigation. *Newton v. Amhof Trucking, Inc.*, 385 F. Supp. 2d 1103, 1109 (D. Kan. 2004). Here, Mr. Leatherman represents that his firm expended $435.39 in costs. The

court thus deducts $435.39 from the wrongful death settlement proceeds to compensate plaintiff's counsel's reasonable costs.

### B. Attorney's Fees

Kan. Stat. Ann. § 60–1905 "requires the district court to determine a reasonable fee for the plaintiffs' attorneys in a wrongful death case." *Baugh v. Baugh ex rel. Smith*, 973 P.2d 202, 207 (Kan. Ct. App. 1999). "The general rule is that an attorney is entitled to the reasonable value of services performed for the client." *Id.* When deciding whether a requested fee is reasonable, the court considers the factors set forth in Kansas Rule of Professional Conduct 1.5(a). *Id.* Those factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

Kan. R. Prof'l Conduct 1.5(a).

Here, plaintiff entered into a contingency fee agreement with her attorney, Mr. Leatherman. The agreement obligated plaintiff to pay Mr. Leatherman a 40% contingency fee after a Petition to recover damages is filed. Although the case settled after the filing of the Petition,[1] Mr. Leatherman seeks only a one-third contingency fee instead of the 40% contingency fee provided by the agreement. Mr. Leatherman also has waived any claim for attorney's fees under Kan. Stat. Ann. §§ 40-908 and 40-256 for the settlement with defendant AAA.

---

[1] Plaintiff filed a Petition in the District Court of Shawnee County, Kansas. Defendants removed the lawsuit based on diversity jurisdiction under 28 U.S.C. § 1332(a). Doc. 1.

The court finds that plaintiff's counsel's requested fee representing one-third of the gross settlement proceeds less costs is a reasonable one. The Rule 1.5(a) factors support the requested award. First, Mr. Leatherman obtained a favorable result for plaintiff with the Settlement Agreement. Mr. Leatherman negotiated an agreement that compensates Dianah for some of the losses that she sustained under defendant AAA's insurance policy to the fullest extent allowed by law. Second, the contingency agreement reasonably compensates Mr. Leatherman for accepting the case on a contingency basis. He accepted the risks and responsibilities that come with such an agreement, and the one-third award reasonably compensates him for doing so. Third, the award appears reasonable based on Mr. Leatherman's litigation experience and reputation. Finally, the attorney fee award is reasonable compared to contingency fees charged and awarded in other wrongful death cases. Indeed, our court has approved attorney's fees of one-third of the gross settlement proceeds as reasonable in other cases apportioning wrongful death proceeds under Kan. Stat. Ann. § 60-1905. *See Dudley v. Gagne*, No. 05-2030-JAR, 2006 WL 314347, at *2 (D. Kan. Feb. 3, 2006); *see also Turman*, 125 F. Supp. 2d at 448 (Lungstrum, J.) ("[I]n [the court's] experience . . . a one-third contingency fee is not uncommon in wrongful death actions.").

For all these reasons, the court concludes that the one-third contingency fee award requested by plaintiff's counsel is reasonable. The court thus awards $33,188.20 to plaintiff's counsel as reasonable attorney's fees.

### C.     Apportionment of Settlement

Last, the court considers how to apportion the remaining wrongful death settlement proceeds to the heirs-at-law. At the hearing, the court heard testimony from only one of Mr. Greene's heirs-at-law—Mr. Greene's widow, Dianah. She testified that her situation has not

changed since the last hearing on February 16, 2017. The two other heirs-at-law—John Igercic-Greene ("John") and Rebecca Igercic-Greene ("Becky")—did not attend the hearing. Plaintiff's counsel represented that he had served John and Becky with notice of the hearing by personally serving them, and the record confirms as much. *See* Docs. 32, 33. Because they did not appear at the February 16, 2017 or the November 15, 2017 settlement apportionment hearing, the court has no information before it about the nature of the loss sustained by either John or Becky. The court thus awards none of the wrongful death settlement proceeds to John and Becky for the reasons stated in its February 24, 2017 Memorandum and Order (Doc. 21).

The court also notes that neither John nor Becky has objected to Dianah's requested apportionment of the partial settlement. And, based on Dianah's testimony, it appears that both individuals want Dianah to receive all of the settlement.

After considering the evidence at the hearing, including that presented at the February 16, 2017 hearing, the court concludes that Dianah sustained the paramount loss from Mr. Greene's death and is entitled to all of the remaining wrongful death settlement proceeds. The court incorporates its conclusion that Dianah sustained the paramount loss and the reasoning for that conclusion from the February 24, 2017 Memorandum and Order (Doc. 21) here.

## IV. Conclusion

Consistent with the findings and conclusions above, the court apportions the $100,000 wrongful death settlement proceeds as follows:

| | |
|---|---:|
| **Wrongful Death Proceeds:** | $100,000.00 |
| **Costs:** | $435.39 |
| **Attorney's Fees:** | $33,188.20 |
| **Total Remaining for Apportionment:** | $66,376.41 |

| **Heir** | **Proportion** | **Amount Received** |
|---|---|---|
| Dianah Greene | 100% | $66,376.41 |
| John Igercic-Greene | 0% | $0 |
| Rebecca Igercic-Greene | 0% | $0 |

**IT IS THEREFORE ORDERED THAT** the court apportions the $100,000 wrongful death settlement proceeds according to and consistent with this Memorandum and Order. Mr. Leatherman, as plaintiff's counsel, is directed to distribute promptly the funds represented by the settlement check presented during the hearing.

**IT IS SO ORDERED.**

**Dated this 21st day of November, 2017, at Topeka, Kansas.**

        **s/ Daniel D. Crabtree**
        **Daniel D. Crabtree**
        **United States District Judge**